## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____ )
                                 )
CONSERVATION FORCE,              )
                                 )
              Plaintiff,         )
                                 )
       v.                        )    Civil Action No. 12-CV-1428 (KBJ)
                                 )
DANIEL M. ASHE, Director of the  )
U.S. Fish and Wildlife Service,  )
in his official capacity, et al.,)
                                 )
              Defendants.        )
                                 )
_____)
```

## MEMORANDUM OPINION

Plaintiff Conservation Force brought this action when Defendants U.S. Fish and Wildlife Service ("the Service" or "FWS") and its Director, Daniel M. Ashe, failed to respond to a document request that Plaintiff made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012).  (Complaint ("Compl."), ECF No. 1.)  After Plaintiff filed the complaint in this case, the Service produced a number of responsive documents.  (Defs.' Statement Of Material Facts As To Which There Is No Genuine Dispute ("Defs.' Facts"), ECF No. 11, ¶ 5.)  Consequently, the only issue at present is whether the Service conducted an adequate search when it gathered documents responsive to Plaintiff's request.  Defendants have filed a motion to dismiss the complaint, or in the alternative for summary judgment ("Defs.' Mot.") (ECF No. 11), in which they argue that they have produced all of the responsive documents that were found as a result of an adequate search and thus the case is moot.  Plaintiff has filed a cross-motion for summary judgment ("Pl.'s Mot.") (ECF No. 14), which maintains, to

the contrary, that the Service's search was inadequate and that the case is not moot because Plaintiff is still waiting to receive all of the documents that are responsive to the FOIA request.

Upon consideration of the motions and the record herein, the Court concludes that the Service has not conducted an adequate search for responsive records, and therefore, that the agency's documents production does not render this case moot. Accordingly, Defendants' motion to dismiss, or alternatively for summary judgment, is **DENIED**, and Plaintiff's cross-motion for summary judgment is **GRANTED**. A separate order consistent with this opinion will follow.

## I. BACKGROUND

### A. The Endangered Species Act

This case arises out of a FOIA request for documents pertaining to the Service's consideration of a petition brought under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544 (2006). Pursuant to regulations promulgated at 50 C.F.R. §§ 17.1-17.108 (2012), the Service "determine[s] whether any species is an endangered species or a threatened species." 16 U.S.C. § 1533(a)(1).[1] The Service announces the status of a species by listing it as "endangered" or "threatened" in the Federal Register. *Id.* § 1533(c).[2]

---

[1] A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). A species's "range" refers to the geographic region it occupies. *See* 90-Day Finding on Straight-horned Markhor Downlist Petition, 64 Fed. Reg. 51,499, 51,500 (Sept. 23, 1999).

[2] Endangered or threatened species enjoy special protections under the ESA and promulgated regulations. *See* 16 U.S.C. § 1538(a); 50 C.F.R. §§ 17.21, 17.31 (2012). For example, the hunting and the importation of sport-hunted trophies are prohibited for most endangered or threatened animals. 50 C.F.R. §§ 17.21, 17.31 (2012).

The ESA allows individuals to submit petitions to downlist or delist a species—

*i.e.*, to remove a species from the list of endangered or threatened animals. *Id.*

§ 1533(b)(3). The ESA mandates that within ninety days of receiving a downlist

petition, the Service "shall" publish in the Federal Register a finding as to "whether the

petition presents substantial scientific or commercial information indicating that the

petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A) ("90-day finding"). If

the Service concludes that the requested downlist may be warranted, then the statute

requires it to publish an additional finding within twelve months, stating that (a) the

petition is warranted, or (b) the petition is not warranted, or (c) the petition is warranted

but other pending proposals preclude it. *Id*. § 1533(b)(3)(B) ("12-month finding"). If

the Service concludes that the downlist is warranted as stated in the 12-month finding,

then a general notice and a proposed regulation downlisting the species must promptly

follow. *Id.* § 1533(b)(3)(B)(ii). Thus, the ESA requires the Service to follow a two-step

process for making findings related to downlist petitions: first, the Service must make

and publish a 90-day finding; then, if the 90-day finding is that the downlist petition

has merit, the Service must proceed to make and publish a 12-month finding regarding

whether the downlist petition is warranted.

### B. The Straight-Horned Markhor and the 1999 Downlist Petition

Plaintiff Conservation Force is a non-profit foundation that describes itself as

promoting wildlife conservation, education, and research. (Compl. ¶ 8.)[3] This litigation

concerns Plaintiff's interest in the straight-horned markhor, a wild goat found in the

---

[3] Plaintiff maintains "that hunters and anglers are an indispensable and essential force for wildlife conservation." *Conservation of Wildlife & the Natural World*, Conservation Force, http://www.conservationforce.org (last visited Oct. 10, 2013).

Torghar Hills region of Pakistan. (*Id.* ¶¶ 1, 8.) Overhunting, habitat loss, and competition from livestock have greatly diminished the markhor population. (*See* 90-Day Finding on Straight-horned Markhor Downlist Petition, 64 Fed. Reg. 51,499 (Sept. 23, 1999), Ex. 1 to Pl.'s Mot., ECF No. 14-1, at 2.) As a result, in 1975, the Service classified the straight-horned markhor as "endangered" under the ESA. (*Id.*)

In 1999, an individual named Naseer Tareen submitted a petition to downlist the straight-horned markhor ("the 1999 downlist petition") on behalf of the Society for Torghar's Environmental Protection ("STEP"). (Compl. ¶ 13.) The Service reviewed Tareen's petition and made a 90-day finding that the 1999 downlist petition had merit, but it subsequently failed to make the required 12-month finding. (*Id.*) Nine years after the deadline for the 12-month finding, Plaintiff initiated a lawsuit to compel the Service to make that finding, but that action was dismissed as statutorily time-barred. *See Conservation Force v. Salazar*, 811 F. Supp. 2d 18, 28 (D.D.C. 2011).[4]

Trying a different tack with respect to the 1999 downlist petition, Plaintiff submitted the instant FOIA request to the Service in October of 2011, seeking the entire administrative record for that petition. (Compl. ¶ 15.) In relevant part, Plaintiff requested the following:

---

[4] Plaintiff later appealed the dismissal of the action seeking to compel the Service to make a 12-month finding regarding Tareen's 1999 downlist petition. *See Conservation Force v. Salazar*, No. 09-cv-495, Notice of Appeal, Nov. 1, 2011, ECF No. 38. Plaintiff also filed its own downlist petition in regard to the straight-horned markhor, and as a result, the Service has since made a related 12-month finding and has proposed to downlist the species. *See* Endangered & Threatened Wildlife & Plants; Reclassifying the Straight-Horned Markhor With Special Rule, 77 Fed. Reg. 47,011 (Aug. 7, 2012). On August 20, 2013, the D.C. Circuit affirmed the dismissal of Plaintiff's lawsuit regarding the Tareen downlist application, holding that "[t]he Service's publication of a 12-month finding on [the other, similar] petition renders moot [Plaintiff's] challenges to the Service's failure to publish such a finding with respect to Tareen's 1999 petition." *Conservation Force v. Jewell*, No. 11-5316, -- F.3d --, 2013 WL 4417452, at *3 (D.C. Cir. Aug. 20, 2013).

> [T]he entire Administrative Record for the petition to downlist the
> markhor filed by Naseer Tareen and STEP in 1999. (64 F.R. 51499,
> "90-day Finding on Petition to Reclassify the Straight-horned
> Markhor Population of the Torghar Region of Balochistan, Pakistan
> from Endangered to Threatened and Initiation of Status Review for
> Markhor.")

(Ex. 1 to Defs.' Mot., ECF No. 11-2, at 3.)  Although the Service promptly

acknowledged by letter that it had received Plaintiff's FOIA request and that it would

"advise [Plaintiff] of the status of our response within 20 workdays[,]" neither an

update nor any responsive production followed.  (Compl. ¶¶ 17, 20.)  Plaintiff's counsel

sent a follow-up letter to the Service inquiring about the status of the production the

following month, but again there was no response.  (*Id.* ¶¶ 18-19.)  After ten months

elapsed without any word from the Service, Plaintiff filed the instant FOIA lawsuit.

(*Id.* ¶¶ 20-22.)

The Service responded to Plaintiff's FOIA request three months after the

complaint in this case was filed.[5]  The Service purportedly found a total of 59

documents, which it released to Plaintiff along with a cover letter that stated that the

Service was "providing all pertinent responsive documents that we found in our files."

(Ex. 2 to Defs.' Mot., FWS Letter of Oct. 24, 2012, ECF No. 11-3.)  The Service also

took care to note that it was not withholding or redacting any of the responsive

documents it found during the search.  (*Id.* ("No information has been withheld in our

response.").)  The Service then filed a motion to dismiss or, in the alternative, a motion

---

[5] According to the declaration of Helen Speights, Chief of the Branch of Endangered Species Act
Litigation Support for the Service ("FWS Litigation Support"), the Service's "Branch of Foreign
Species [had] searched its electronic and hard copy records for any document responsive to [Plaintiff's]
FOIA request" in December of 2011, shortly after receiving the FOIA request.  (Decl. of Helen
Speights, Nov. 29, 2012 ("Speights Decl. I"), ECF No. 11-1, ¶ 8.)  FWS Litigation Support received
internal notification that responsive records had been located, but"[d]ue to administrative oversight[,]"
the Service did not communicate that information to Plaintiff until after this lawsuit was filed.  (*Id.* ¶¶
9, 13, 15).

for summary judgment in this action, arguing that the litigation was moot because the Service had provided all responsive documents to Plaintiff. (Defs.' Mot. at 1.)

In its combined opposition and cross-motion for summary judgment, Plaintiff continues to challenge the Service's response to its FOIA request. Plaintiff asserts that the FOIA request expressly sought "the entire Administrative Record," and that the Service admittedly has not searched for any documents that were generated *after* the 90-day finding, *i.e.*, documents from the period in which the Service considered, but did not make, the required 12-month finding with respect to the Tareen petition. In Plaintiff's view, records from the period after the published 90-day finding are part of the administrative record, and the Service has improperly failed even to search for any such records, much less to produce them, based on the "mistaken assertion that they have made a complete release of responsive documents' for the [FOIA] request underlying this suit." (Pl.'s Mot. at 1.) Therefore, Plaintiff argues, not only is the case not moot, but summary judgment should be granted in Plaintiff's favor. (*Id.*)

The question for this Court is whether, by limiting its FOIA search to records that were generated or considered prior to the 90-day finding, the Service conducted an adequate search in response to Plaintiff's request for "the entire Administrative Record" such that the Service's release of the documents it found during its limited investigation moots this case.

## II.    LEGAL STANDARDS

### A. Motion to Dismiss for Mootness

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S.

625, 631 (1979) (citation omitted). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Instead, to prevail on a mootness claim arising from a defendant's voluntary conduct, a movant must show that "there is no reasonable expectation . . . that the alleged violation will recur, and . . . interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[.]" *Davis*, 440 U.S. at 631 (internal citations and quotation marks omitted); *see also McKinley v. FDIC ("McKinley I")*, 756 F. Supp. 2d 105, 110 (D.D.C. 2010) (same).

In the FOIA context, "once all requested records are surrendered," the controversy disappears and "federal courts have no further statutory function to perform." *McKinley I*, 756 F. Supp. 2d at 110 (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). However, a court maintains jurisdiction even after an agency releases documents when other related issues, such as the proper scope of the agency's search, remain unresolved. *See, e.g.*, *Northwestern Univ. v. USDA*, 403 F. Supp. 2d 83, 85-86 (D.D.C. 2005) (refusing to dismiss action as moot despite belated release of documents because plaintiff challenged adequacy of defendant's document production); *Looney v. Walters-Tucker*, 98 F. Supp. 2d 1, 2-3 (D.D.C. 2000) (refusing to dismiss action as moot even after production of requested documents because "[i]n a FOIA case, courts always have jurisdiction to determine the adequacy of a search").

### B. Cross Motions for Summary Judgment in FOIA Cases

The Service has moved for summary judgment as an alternative to its motion to dismiss, on the grounds that there is no genuine issue of material fact regarding whether

they have provided all responsive documents.  (Defs.' Mot. at 1.)  As noted above, Plaintiff has filed a motion for summary judgment of its own, arguing that the Service failed to conduct an adequate search in response to Plaintiff's FOIA request.  (Pl.'s Mot. at 10.)

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also* Fed. R. Civ. P. 56.  In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA.  5 U.S.C. § 552(a)(4)(B); *see also In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92 (D.D.C. 2008) (same).  The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester.  *See Wills v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).  As such, summary judgment for an agency is only appropriate after the agency proves that it has "fully discharged its [FOIA] obligations[.]" *Moore v. Aspin,* 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

To evaluate the adequacy of an agency's search, a court must first review the record *de novo* to ensure that the agency properly ascertained the scope of the FOIA request. 5 U.S.C. § 552(a)(4)(B); *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 156 (D.D.C. 2009) (noting that, in the FOIA context, "a district court reviewing a motion for summary judgment conducts a *de novo* review of the record"); *see also Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) (same). Although a requestor must "reasonably describe[]" the records sought, 5 U.S.C. § 552(a)(3)(A)(i), an agency's record keepers must "construe a FOIA request liberally." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889-90 (D.C. Cir. 1995) (citing *Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990)).

In addition to having determined the scope of the request properly, the agency also must have conducted a search that itself was "reasonably calculated to uncover all relevant documents." *Truitt*, 897 F.2d at 542 (quoting *Weisberg v. Dep't of Justice ("Weisberg II")*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *Thomas v. Dep't of Health & Human Servs.*, *FDA*, 642 F. Supp. 2d 5, 8 (D.D.C. 2009) (same). The court's assessment in this regard is "guided by principles of reasonableness." *Thomas*, 642 F. Supp. 2d at 8 (citation omitted). The agency must show that it made a good faith effort to search for responsive documents "using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted). Thus, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the

methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted).

"On a motion for summary judgment, an agency may discharge its burden of establishing the reasonableness of its search by submitting a 'reasonably detailed affidavit' describing the search performed and averring that all files likely to contain responsive documents were searched." *Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011) (quoting *Oglesby*, 920 F.2d at 68). If the agency can make that showing, then the burden shifts to the plaintiff to provide evidence sufficient to raise "substantial doubt" about the adequacy of the agency's search. *Iturralde*, 315 F.3d at 314 (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

Accordingly, for an agency to prevail on summary judgment, it must prove that its search was reasonable. *See Thomas*, 642 F. Supp. 2d at 8. Alternatively, for a plaintiff to prevail, there must be no genuine issue regarding the fact that the agency defaulted in its search obligations. *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). However, "if the sufficiency of the agency's [search] is genuinely in issue, summary judgment [for either party] is not in order." *Weisberg v. U.S. Dep't of Justice ("Weisberg I")*, 627 F.2d 365, 370 (D.C. Cir. 1980).

## III. ANALYSIS

There is no dispute that the FOIA request in this case asks for "the entire Administrative Record" for the 1999 straight-horned markhor downlist petition. Consequently, an evaluation of the adequacy of the Service's search requires an assessment of the scope of the "administrative record." The Service argues that, by locating and producing the documents that the Service "relied upon in making its 90-

day finding," it conducted a reasonable search for records in response to Plaintiff's request and has therefore discharged its duty under the FOIA. (Defs.' Resp. to Pl.'s Mot. ("Defs.' Resp."), ECF No. 16, at 2.)  The Service maintains that the entire administrative record with respect to the 90-day finding includes only documents generated or considered in the period *prior to* the 90-day finding, and in any event, the parenthetical reference in Plaintiff's FOIA request expressly limits the request to documents relied upon to make that 90-day finding. (*Id.* at 3.)  Plaintiff counters that the Service's search was unreasonable and inadequate because the FOIA request plainly seeks "all records arising from the 1999 petition, not just those up to the 90-day finding." (Pl.'s Mot. at 2, 8.)[6]

For the reasons that follow, the Court agrees with Plaintiff.

## A.  The Proper Scope of the Administrative Record

An administrative record "includes all materials compiled by the agency . . . that were before the agency at the time [a] decision was made." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (internal quotation marks and citation omitted).  "The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Stainback v. Sec'y of the Navy*, 520 F. Supp. 2d 181, 185 (D.D.C. 2007) (citation omitted).  There is a "well-established presumption that an agency has properly designated the administrative record." *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d

---

[6] Plaintiff also makes an alternative argument challenging the adequacy of the Service's declarations. (*See* Pl.'s Mot. at 6-7.)  Because the Court concludes that the Service's search for records was inadequate, *see infra*, it declines to consider this argument.

23, 27 (D.D.C. 2009). However, "clear evidence to the contrary" rebuts this presumption. *Id.*

Significantly for present purposes, the Service's director has issued an informal policy directive to assist agency employees when they are compiling an administrative record. (*See* Ex. 2 to Pl.'s Mot., FWS Division of Policy and Directives Management, 282 FW 5, Compiling a Decision File and an Administrative Record, ECF No. 14-1, at 33.) These guidelines define the administrative record as "the paper trail that documents the Service's decisionmaking process and the basis for *any final Service decision*." (*Id.* at 34 (emphasis added).)

With these guidelines in mind, the Service in the instant case argues that there was no final "decision" related to the 1999 downlist petition after the 90-day finding, and thus there can be no subsequent administrative record. (Defs.' Resp. at 3.) In support of this argument, the Service cites *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002), which it says stands for the proposition that the administrative record is what the agency relied on *before* a final rule was issued. (Defs.' Resp. at 3 (quoting *Ad Hoc Metals* as stating that "a complete record must include any materials that were 'referred to, considered by, or used by [the agency] *before* it issued its final rule'" (emphasis and alterations in Defs.' Resp.)).) In other words, the Service contends that, because it never made a 12-month finding (despite its statutory obligation to do so), "the 90-day finding was the only decision or agency action that [was] made with respect to [the] 1999 petition"; consequently, there is no administrative record beyond the 90-day finding. (Decl. of Helen Speights, Jan. 15, 2013 ("Speights Decl. II"), ECF No. 16-1, ¶¶ 7-8.)

The Court is not persuaded by these arguments. The Service found that the 1999 downlist petition had merit at the 90-day stage; therefore, the agency had a mandatory statutory duty to make a 12-month finding. *See* 16 U.S.C. § 1533(b)(3)(B)(ii). This the agency did not do, but that by no means establishes that the Service did not take final action (*i.e.*, that it did not make a "decision") with respect to the 1999 downlist petition. It is well established that an agency's failure to act is itself a final agency action for the purpose of administrative procedure. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987); *Citizens for a Better Env't v. Costle*, 617 F.2d 851, 853 n.5 (D.C. Cir. 1980). What is more, courts in this district have found that the type of inaction at issue here—an agency's failure to make a 12-month finding—constitutes final agency action for the purposes of review under the Administrative Procedures Act, *see, e.g.*, *Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 11 (D.D.C. 2001), and there is no reason why such inaction should be treated differently for the purpose of the agency's duty to produce record documents under the FOIA. Indeed, the statutory subchapter into which the FOIA falls specifically defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." 5 U.S.C. § 551(13) (2012) (emphasis added); *see also Sanders v. Obama*, 729 F. Supp. 2d 148, 151 n.1 (D.D.C. 2010) ("FOIA . . . provides for a cause of action based on the actions/*inactions* of agencies[.]" (emphasis added) (citing *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006))).

Moreover, the Service's failure to issue a 12-month finding in the instant case had the same legal effect as a formal decision to deny the 1999 downlist petition would have had: the Service did not take the petitioned-for course, and the straight-horned

markhor remained on the endangered species list. In this circuit, an agency can be said to have 'acted' when the agency's decision making process has "consummate[ed]" and "legal consequences . . . flow." *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004) (internal quotation marks and citation omitted). And it is clear beyond cavil that, "at some point, an agency's failure to act becomes, in effect, a final decision." *Citizens for a Better Env't*, 617 F.2d at 853 n.5; *see also Sierra Club*, 828 F.2d at 793 ("[A]gency inaction may represent effectively final agency action that the agency has not frankly acknowledged[.]"). This Court has little doubt that the "final decision" point was reached in the instant case when 12 months elapsed and no finding as to the status of the straight-horned markhor was made. In other words, the Court concludes that the Service's failure to publish a 12-month finding, in violation of its statutory duty to do so, constitutes a final agency decision in this case such that documents that the Service generated or considered in regard to the 1999 downlist petition *after* the 90-day finding was made (including but not limited to documents that were part of the mandatory notice and comment period for the 12-month finding) are part of the "entire Administrative Record" for purposes of Plaintiff's FOIA request. *See Harris*, 353 F.3d at 1010; *see also Ad Hoc Metals*, 227 F. Supp. 2d at 139 (the administrative record includes documents generated or produced leading up to the final agency decision). Were it otherwise, an agency could almost always circumvent its FOIA duty to produce record documents with respect to rejected petitions simply by running out the clock on the formal decision making period.[7]

---

[7] The Court recognizes that its conclusion that the administrative record in this case includes documents generated after the Service's 90-day finding raises the secondary question of how far the post-finding record extends. Although no Court in this Circuit has dealt squarely with this issue, common sense

## B. The Service's Interpretation of Plaintiff's FOIA Request

The Service's second argument—that the parenthetical in Plaintiff's FOIA request limits the request by its own terms—fares no better. "In determining the proper scope of a FOIA request, '[t]he linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested.'" *McKinley v. FDIC ("McKinley II")*, 807 F. Supp. 2d 1, 5 (D.D.C. 2011) (alterations in original) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)); *see also American Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) ("Agencies . . . need not expand their searches beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.'" (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003))). The Service contends that Plaintiff's FOIA request only asks for the small set of documents that the Service actually produced because the parenthetical that follows the request for "the entire Administrative Record" specifically identifies the 90-day finding. (Defs.' Resp. at 2.) But, for the reasons explained below, it is clear to the Court that the parenthetical is best read as "an additional attempt to clarify wh[ich] petition the request concerned" (Pl.'s Mot. at 8), rather than as a limitation on the set of documents requested.

First, it is indisputable that "a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific

---

dictates that the Service's failure to make the requisite follow-up finding within the allotted statutory timeframe should mark the end of the relevant "record" for FOIA purposes. *Cf. Dayton Newspaper, Inc. v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 441, 447 (S.D. Oh. 2007) ("[T]here has to be a temporal deadline for documents that satisfy [a FOIA] request. This deadline is often referred to as the cut-off date . . . . [A] reasonable cut-off date is the date of the [agency's] final decision." (internal quotation marks and citations omitted)); *see also Ad Hoc Metals*, 227 F. Supp. 2d at 139. Consequently, an adequate search for the entire administrative record in this case would involve a search for documents that the Service generated or considered up to and including the date by which the Service should have made the required12-month finding: March 3, 2000.

subset thereof." *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003); *see also Elec. Frontier Found. v. Dep't of Commerce*, No. C12-3683, 2013 WL 3730096, at *10 (N.D. Cal. July 12, 2013) ("The fact that [plaintiff] specified two categories of information in which it had a particular interest does not relieve [defendant] of its obligation to conduct a search for the presumably broader set of records falling within [plaintiff's] general request." (citing *LaCedra*, 317 F.3d at 348)). This means that there was nothing unusual or untoward about the fact that the FOIA request both seeks the "entire" administrative record and references the 90-day finding, which is a subset of that record. To interpret Plaintiff's parenthetical somehow to limit the broader ask when the whole set of records is plainly requested is manifestly inconsistent with the text and spirit of Plaintiff's inquiry. *See LaCedra*, 317 F.3d at 348 ("[I]t [is] improbable . . . that a person who wanted only the subset would draft a request that, like [Plaintiff's], first asks for the full set.").

Second, the Service's reading of Plaintiff's FOIA request renders portions of the request mere surplusage—a result that is anathema to established principles of reasoned interpretation. *Cf. Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1302 (D.C. Cir. 1998) (observing that, in interpreting a contract, courts "assume that the parties intended for every part of the agreement to have meaning"); *Tax Analysts v. IRS*, 217 F. Supp. 2d 23, 28 (D.D.C. 2002) (noting courts prefer to read statutory provisions "so that no word, clause, sentence, or phase is rendered surplusage, superfluous, meaningless or nugatory" (citation omitted)). As has now been stated repeatedly, Plaintiff plainly requested the "*entire* [a]dministrative [r]ecord" stemming from the 1999 straight-horned markhor downlist petition. (Ex. 1 to Defs.' Mot., at 3 (emphasis added).) If the Court

were to read the parenthetical as restricting Plaintiff's FOIA request to only those documents that were generated or considered in the run up to the 90-day finding, then the word "entire" would be meaningless, or, at worst, contradictory. Thus, as a matter of straight textual construction, the better reading of Plaintiff's parenthetical is to construe it as a clarification of the subject matter of the requested set of records in light of the fact there was no final published rule, rather than to treat it as an intentional nullification of a substantial part of the primary request.

Finally, even if the Service's narrow reading is a reasonable one, an agency "has a duty to construe a FOIA request liberally." *Nation Magazine*, 71 F.3d at 890 (citing *Truitt*, 897 F.2d at 544-45). To be sure, Plaintiff's FOIA request "is not a model of clarity" insofar as the broad request for the entire administrative record "is in considerable tension" with the subsequent parenthetical, which specifically refers to the 90-day finding. *LaCedra*, 317 F.3d at 348. However, a liberal reading is nonetheless required, and any fair construction of Plaintiff's FOIA request cannot foreclose the possibility that Plaintiff wants the whole record, even if the language also mentions a subset of that category of documents. Indeed, when the request is liberally construed, the most that can be said about Plaintiff's FOIA request is that it is ambiguous: it *either* directs the Service to the particular type of document sought within the broader category of the entire administrative record (as the Service argues) *or* indicates Plaintiff's heightened interest in a particular subset of the larger category of materials that is being specifically requested. *See id.* And assuming that the FOIA request is subject to both of these reasonable readings, the Service had a duty under the FOIA to select the interpretation that would likely yield the greatest number of responsive

documents. *Cf. Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012) ("[A]n agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information." (citation omitted)); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) ("[T]he agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists[.]").

This conclusion is not unprecedented in this district. The plaintiff in *Hemenway v. Hughes*, *supra*, sought information about the citizenship of individuals who had been accredited to attend State Department press briefings. *Id.* at 1003. The specific FOIA request asked for a "List of Persons Accredited to attend the Department of State press briefings, their news affiliation and citizenship," *id.*, and in response, the State Department provided only a list of correspondents and their news affiliation, with no reference to citizenship, *id.* at 1004. The State Department argued that the FOIA request expressly sought a single "list," and that the Department "does not maintain" any list containing the correspondents' citizenship information. *Id.* Moreover, because the citizenship of accredited persons was not contained in any list the agency possessed, the Department argued that it had no obligation to provide any citizenship information whatsoever. *Id.* In evaluating the Department's response to the FOIA request, the *Hemenway* court found that the request "reasonably could be interpreted to ask either for a single list of accredited persons complete with citizenship information, or—as plaintiff argues—for a list of accredited persons *and* any additional information the agency might have dealing with the particular individual's citizenship status and news affiliation." *Id.* at 1005 (emphasis in original). But rather than "get involved in a

semantic debate" about the meaning of the request, the Court concluded that the agency's duty to construe the request liberally gave rise to "an obligation to provide any files containing citizenship information they had[,]" so long as that additional information "was not covered by an exemption." *Id.*

So it is here. In this case even more so than in *Hemenway*, the FOIA request makes clear that Plaintiff was seeking "the entire Administrative Record" regarding the 1999 straight-horned markhor downlist petition. The semantic question of whether the parenthetical reference somehow limits "entire" need not be answered definitively because, regardless, the Service had an obligation to interpret the FOIA request broadly. *See Nation Magazine*, 71 F.3d at 889-90; *Truitt*, 897 F.2d at 544-45. Consequently, the Service here should have undertaken a search for the "entire" administrative record to satisfy its FOIA obligation, notwithstanding any more limited construction that could have been applied to the request.

In sum, the Court concludes that the Plaintiff's FOIA request for the "entire Administrative Record" related to the 1999 downlist petition must be read to encompass relevant records that the Service generated or considered beyond the 90-day finding, up to and including the point at which the Service failed to make the mandatory 12-month finding, and it was unreasonable for the Service to conclude otherwise. Moreover, because it is undisputed that the Service did not search for responsive records that were generated or considered during the period after the 90-day finding, there is no genuine issue regarding the fact that Service's search for records was incomplete, and thus Plaintiff is entitled to summary judgment.

This conclusion necessarily means that the instant action is not moot because Plaintiff still awaits a fully-informed response to its FOIA request. In other words, the Service cannot yet say that Plaintiff has received all of the responsive documents that the agency has in its files because it has not yet searched for documents in a manner that is designed to yield all of the records that Plaintiff plainly seeks. It may well turn out that no other responsive documents turn up once an adequate search for the entire administrative record is conducted (such as would be the case if, back in 1999, the Service entirely neglected its obligation to engage in any decision making processes regarding the straight-horned markhor after it made the 90-day finding). But the FOIA obligates the Service to conduct a reasonable search for any and all responsive documents. And the agency cannot truncate its search arbitrarily based on the unfounded conclusion that Plaintiff's FOIA request is not worded broadly enough to encompass this category of records.[8]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, or in the alternative for summary judgment, is **DENIED**, and Plaintiff's motion for summary judgment is **GRANTED**. Consistent with this opinion and pursuant to its duty under the FOIA, the Service must conduct a search for the full set of records that comprise the

---

[8] Notably, as additional support for its motion for summary judgment, Plaintiff points to evidence that suggests that a reasonable search for the entire administrative record likely will reveal additional responsive documents. (*See* Pl.'s Mot. at 7 (noting that the Service had "previously declared that it initiated a 'status review' of [a certain] population of straight-horned markhor, following the 90-day finding"); *id.* (documents may have been collecting during "the . . . public comment period for the 1999 petition" which ran from the date of the 90-day finding until January 21, 2000").) Be that as it may, the potential existence of additional responsive records is not pertinent to today's FOIA inquiry. This is because, as stated above, an agency's initial responsibility under the FOIA is to search for responsive documents in a reasonable fashion, not necessarily to find them. *See Iturralde*, 315 F.3d at 315. The Court's ruling on the pending cross-motions therefore rests entirely on its conclusion that a reasonable search has not yet occurred with respect to the Plaintiff's FOIA request.

administrative record for the requested 1999 downlist petition. The Service will have until January 3, 2014, to acknowledge the existence of responsive documents, if any, and to disclose such documents to Plaintiff. Alternatively, the Service may within that same timeframe establish by way of a motion supported by affidavits that no additional responsive documents were located or that additional responsive documents are being withheld due to the applicability of a FOIA exemption. A separate order consistent with this opinion will follow.

Date: October 10, 2013

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge